UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

HOWARD O. WUNDERLICH, as Trustee of the
HOWARD O. WUNDERLICH REVOCABLE LIVING
TRUST AND ADELINE E. WUNDERLICH in her
Individual Capacity, and as Trustee of the ADELINE E.
WUNDERLICH REVOCABLE LIVING TRUST,

Case No. 2:14-cv-06936
(LDW)(GRB)

Plaintiffs,

**ANSWER**

-against-

LIBERTY MEADOWS, LLC, DEMETRIUS TSUNIS,
and ENRICO SCARDA,

Defendants.

------------------------------------------------------------------X

Defendants, LIBERTY MEADOWS, LLC ("Liberty"), DEMETRIUS TSUNIS

("Tsunis") and ENRICO SCARDA ("Scarda") (collectively, "Defendants"), by their attorneys,

BRACKEN MARGOLIN BESUNDER LLP, answering the Verified Complaint of Plaintiffs

herein, allege as follows:

1.      Deny the allegations of Paragraph 1 and refer the Court to the documents on

which Plaintiffs sue and their demands for relief.

2.      Deny the allegations of Paragraphs 2, 7, 11, 14, 15, 17, 19, 21-27, 30, 31, 32, 34-

36, 38, and 41-45 of the Complaint.

3.      Deny knowledge sufficient to form a belief as to the truth or falsity of the

allegations contained in Paragraphs 3, 4 and 8 of the Complaint.

4.      Deny the allegations contained in Paragraph 5 of the Complaint, except admit that

Liberty has its principal office at One Rabro Drive, Hauppauge, New York.

5.      Deny the allegations of Paragraph 6 of the Complaint, except admit that Tsunis

was and is the managing member of Liberty.

{00212329.1}

6. Deny the allegations of Paragraph 12 of the Complaint, except admit execution of a note and mortgage.

7. Deny the allegations of Paragraph 13 of the Complaint but admit that Liberty and the Trusts executed the 2008 Extension Agreement and refer the Court to that agreement for its terms.

8. Deny the allegations of Paragraph 16 of the Complaint, except admit Defendants and the Plaintiffs entered into the 2010 Note Modification and refer the Court to the 2010 Note Modification for the terms thereof.

9. Deny the allegations of Paragraphs 18 and 33 of the Complaint, and refer the Court to the 2010 Note Modification for the terms thereof.

10. Admit that Tsunis and Scarda executed certain documents entitled "Guaranty" and deny the balance of the allegations contained in Paragraphs 20 and 40 of the Complaint.

11. Admit that Plaintiffs' signatures appear on the 2010 Note Modification and deny the balance of the allegations of Paragraph 29.

12. Deny the allegations of Paragraph 37 of the Complaint, and refer the Court to Paragraph 10 of the 2010 Note Modification for its terms.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

13. The Complaint fails to state a claim in either the first or second causes of action because it fails to allege that Plaintiffs are the payees or holders of the $800,000 promissory note ("Note") which is a predicate for all of Plaintiffs' claims.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE
## AND FIRST COUNTERCLAIM

14. Plaintiffs allege in their first cause of action that the $300,000 additional payment upon default contained in Par. 6 of the April 2, 2010 Agreement ("Agreement") was an obligation of Liberty.

15. The combination of the interest rate in the Note and the additional payment of $300,000 at a time that the outstanding principal on the Note was $300,000 or less exceeded New York's permitted rates of 24% for corporate debtors and constituted criminal usury.

16. As a result, the Agreement and the Note sued upon by Plaintiffs are void under NY Gen. Obligations L. § 5-511.

17. Defendants are entitled to a judgment declaring the Agreement and the Note thereunder illegal, void and unenforceable.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE
## AND SECOND COUNTERCLAIM

18. Plaintiffs allege that the $300,000 additional payment upon default contained in Par. 6 of the Agreement was guaranteed by Tsunis and Scarda in addition to their guaranty of the underlying debt of the remainder of the Note and interest thereon.

19. The resulting interest rate that Plaintiffs allege was guaranteed under the guaranty agreements of Tsunis and Scarda ("Guaranties") was illegal and unenforceable, in that the combination of the $300,000 penalty and the stated rates of interest constituted a rate of interest in excess of New York's permitted rates and constituted criminal usury.

20. As a result, the Agreement, the Note and Guaranty sued upon by Plaintiffs are void under NY Gen. Obligations L. § 5-511.

21. Tsunis and Scarda are entitled to a judgment declaring the Guaranties, the Agreement and Note thereunder illegal, void and unenforceable.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

22. The Complaint alleges that Plaintiffs are entitled to their attorney's fees in the present action based upon the provision of the Agreement which provides for an indemnification running from Liberty to the designated indemnitees.

23. The Agreement expressly states that it is to be interpreted according to New York Law.

24. Under New York law, an indemnity agreement between the two parties to an agreement is not a basis for one of the parties to that agreement to have a legal right to its attorney's fees when suing the other party for breach, unless the language used in the indemnification is "unmistakably clear" that the parties intended that the prevailing party may recover them from the losing party. *Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989).

25. The language of the indemnification clause contained in the Agreement is not "unmistakably clear" that if Plaintiffs prevailed in suing for a breach, they would be entitled to recover their attorney's fees from the losing party.

26. The portion of the Plaintiffs' claim seeking attorney's fees incurred in the present action must be dismissed.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

27. The Complaint asserts that Tsunis and Scarda executed an agreement that required them to pay an additional $300,000 to Plaintiffs in the event of a default by Liberty.

28. Language to that effect appears only in Par. 6 of the Agreement.

29. Tsunis and Scarda signed the Agreement in their individual capacities only as to Paragraphs 5 and 9 of the Agreement.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

30. The purported obligation of Scarda and Tsunis to pay $300,000 upon Liberty's default, in addition to Liberty's obligation to pay the underlying debt and interest thereon, was without consideration.

31. The purported obligation of Scarda and Tsunis to pay $300,000 is therefore void.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

32. The purported obligation of Scarda and Tsunis to pay $300,000 upon Liberty's default, in addition to Liberty's obligation to pay the underlying debt and interest thereon, bears no relationship to any damages that Plaintiffs might suffer from a default, which damages would be otherwise compensated for by other provisions of the Agreement.

33. The $300,000 is a penal sum and an unenforceable penalty under New York law.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

34. At the closing at which the Agreement was executed, the Plaintiffs agreed with Defendants that the attorney's fees charged by their attorney to Defendants were excessive and unreasonable, and to modify the Agreement so that instead of Liberty being obliged to pay $58,000 to Plaintiffs' attorneys, Liberty paid only one-half of that amount, $29,000.

35. The Agreement was modified accordingly.

36. Upon information and belief, Plaintiffs agreed at the closing to pay whatever additional sums were necessary to satisfy the claim of their attorneys.

37. Upon information and belief, Plaintiffs paid some additional sum to their attorneys pursuant to such agreement with Liberty, Tsunis and Scarda.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

38. Tsunis was told in 2014 by Alan Wunderlich, the son of Howard O. Wunderlich ("Howard") and Adeline Wunderlich ("Adeline") that Howard is suffering from dementia.

39. Tsunis made multiple attempts prior to the inception of this lawsuit to contact Howard without success.

40. Tsunis has been advised that both Howard and Adeline are suffering from dementia and are no longer able to care for themselves.

41. Tsunis has been advised that Karen, one of the daughters of Howard and Adeline, stated in January 2015 that both Howard and Adeline are suffering from dementia, that they have been removed from the home where they formerly lived in Spring Hill, Florida and taken by another daughter, Dawn, to live with her at an unknown location outside of the state of Florida, and that Dawn has caused her parents to change their will so as to disinherit Karen. Karen also stated that since her parents moved, on those occasions when she has been able to talk to them, Howard and Adeline state that they do not know where they are.

42. Upon information and belief, both Howard and Adeline lack the mental capacity to prosecute either individual claims or claims as trustees of their respective trusts.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

43. In addition to the payments which Plaintiffs allege they received, Liberty paid the additional sum of $100,000 by paying $50,000 on or about July 20, 2010, and $50,000 on August 17, 2010, which reduced any principal amount due to Plaintiffs by a like amount.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

44. Plaintiffs entered into an "Option Agreement" with Liberty on March 29, 2007, the date that Liberty purchased the underlying property ("Property") from Plaintiffs.

45. The Option Agreement provided that if Plaintiffs elected the option of selecting and receiving the conveyance of one of the condominium units that Liberty planned to construct on the Property, then Liberty would be entitled to a credit of $300,000 against the outstanding balance due to Plaintiffs.

46. The purpose of the Option Agreement was to make potential provision for the conveyance of a condominium unit to Alan Wunderlich, Plaintiffs' son, to use as his residence.

47. Both Plaintiffs and Defendants discussed at the time that the Option Agreement was entered into that the condominium units to be constructed on the Property were expected to have a value of, and sell for, $800,000.

48. The Option Agreement was never cancelled and remained in effect.

49. On April 2, 2010, when Plaintiffs executed the Agreement, they elected to exercise their option under the Option Agreement.

50. The releases and waivers by Defendants recited in Par. 9 of the Agreement did not by the terms of the Agreement extend to the rights and obligations contained in the Option Agreement and therefore did not waive the credit provided for in the event that the option was exercised.

51. A separate contract ("Condo Contract") was entered into between Liberty and Alan Wunderlich on April 2, 2010 setting detailed terms for the construction and ultimate conveyance of the condominium unit to Alan Wunderlich.

52. Alan Wunderlich thereafter selected and then failed to pay for approximately $300,000 of extras and upgrades to be installed in the condominium unit, although the Condo Contract obligated him to do so.

53. When Liberty had the unit selected by Alan Wunderlich almost fully constructed and equipped per the Option Agreement, the Condo Contract and the extras and upgrades ordered by Alan Wunderlich, it contacted Alan Wunderlich to make arrangements for the receipt of the $300,000 credit per the Option Agreement and to receive payment from Alan Wunderlich at closing for the extras and upgrades he had ordered.

54. Alan Wunderlich repudiated Liberty's demand for payment for the extras and upgrades, and advised Liberty, in sum and substance, that Plaintiffs would not accord Liberty a $300,000 credit against the indebtedness in accordance with the Option Agreement.

55. Alan Wunderlich commenced a lawsuit in New York Supreme Court, Suffolk County, in 2014 seeking a judgment of specific performance against Liberty conveying the condominium unit to him without the payment of any monies to Liberty for upgrades and extras installed in the unit.

56. Alan Wunderlich filed a Notice of Pendency against the condominium unit, effectively preventing Liberty from conveying the unit to anyone else while his lawsuit is pending.

57. If and in the event that the condominium unit is conveyed to Alan Wunderlich, Liberty will be entitled to a credit of $300,000 against any indebtedness owed to Plaintiffs.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

58. Defendants repeat and reallege Paragraphs "44" through "57" as if more fully set forth at length herein.

59. By mutual mistake, specific reference to the $300,000 credit due upon the exercise of the option under the Option Agreement was omitted from the Agreement.

**WHEREFORE**, Defendants LIBERTY MEADOWS, LLC, DEMETRIUS TSUNIS and ENRICO SCARDA demand judgment

(a) dismissing the Complaint;

(b) on their First and Second Counterclaims, declaring the Guaranties, the Agreement and the Note illegal, void and unenforceable;

(c) attorney's fees and costs of defending this action; and

(d) such other and further relief as this Court deems just and proper.

Dated: Islandia, New York
January 16, 2015

BRACKEN MARGOLIN BESUNDER LLP

By: Linda U. Margolin
*Attorneys for Defendants*
1050 Old Nichols Road, Suite 200
Islandia, New York 11749
(631) 234-8585/(631) 234-8702
E-mail: lmargolin@bmblawllp.com

TO: Darren Oved, Esq.
Adam S. Katz, Esq.
OVED & OVED LLP
*Attorneys for Plaintiffs*
401 Greenwich Street
New York, New York 10013
(212) 226-2376
E-mail: darren@ovedlaw.com
akatz@ovedlaw.com